[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**October 13, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 05-10059
Non-Argument Calendar

_____

Agency No. A90-956-801

ADALBERTO TOVAR-ALVAREZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 13, 2005)**

Before ANDERSON, CARNES and HULL, Circuit Judges.

PER CURIAM:

Adalberto Tovar-Alvarez, a native of Mexico, petitions this Court for review

of the Board of Immigrations Appeals' decision affirming the Immigration Judge's order of that he be removed from the United States. Because we conclude that the BIA's decision comported with the applicable law and is supported by substantial evidence, we deny the petition.

## I.

It is unclear when Tovar-Alvarez entered the United States; however, he became a lawful permanent resident on December 1, 1990. On August 8, 1996, Tovar-Alvarez filed for naturalization with the INS and signed a statement that he was willing to swear an oath of allegiance to the United States. The INS conducted a naturalization interview with Tovar-Alvarez on March 3, 1999. At this interview, Tovar-Alvarez executed his petition for naturalization and completed the English language, history, and government tests. At the request of the INS interviewer, he then raised his right hand, signed his petition for naturalization, and signed an oath of allegiance to the United States. The INS had not yet finished processing his petition for naturalization on January 16, 2001, when Tovar-Alvarez was convicted in Florida state court for trafficking in amphetamines.

After his conviction, Tovar-Alvarez was charged with removability for having been convicted of an aggravated felony and a drug crime, pursuant to 8 U.S.C. §§1227(a)(2)(A)(iii), 1227(a)(2)(B)(i). The IJ ordered him removed and

the BIA affirmed the IJ's order of removal.  Tovar-Alvarez then petitioned this Court for review.

Tovar-Alvarez contends that he is not removable because he became either a citizen or a national of the United States before his conviction and, therefore, was not an alien subject to removability for having been convicted of an aggravated felony or drug crime.  Even if he is not a citizen or national of the United States, he argues, the government should be equitably estopped from claiming he is an alien because the only reason he was still an alien at the time of his conviction is the INS's failure to process his petition for naturalization within 120 days, as required by its own regulations.

## II.

While Tovar-Alvarez's petition for review was pending before this Court, Congress passed, and the President signed into law, the REAL ID Act of 2005, which amended the INA's rules governing judicial review.  See REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231.  The Act made the permanent rules applicable to all petitions for review, providing that any petition for review "filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. 1252 note)) shall be treated as if it had been

filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. 1252)." Id. §106(d), 119 Stat 231, 311.

The Act also amended § 242(a)(2) of the INA by adding subsection (D), which states:

> JUDICIAL REVIEW OF CERTAIN LEGAL CLAIMS.--Nothing in subparagraph (B) or (C), or in any other provision of this Act (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section.

Id. §106(a), 119 Stat. 231, 310 (emphasis added). The Act further provides that this amendment "shall take effect upon the date of the enactment of this division and shall apply to cases in which the final administrative order of removal, deportation, or exclusion was issued before, on, or after the date of the enactment of this division." Id. §106(b).

Under the permanent rules, this Court has jurisdiction to review whether Tovar-Alvarez is an alien. Moore v. Ashcroft, 251 F.3d 919, 923 (11th Cir. 2001) ("We have held that under the plain language of INA § 242(a)(2)(C), a court is permitted to review only the threshold issues of whether Petitioner is (1) an alien; (2) who is removable; (3) based on having committed a disqualifying offense."). The REAL ID Act has given us jurisdiction to review as well "questions of law raised upon a petition for review." Pub. L. 109-13 §106(a), 119 Stat. 231, 310.

4

Tovar-Alvarez's equitable estoppel argument is a such question of law and therefore subject to our review. See United States v. Walcott, 972 F.2d 323, 325 (11th Cir. 1992) ("Whether the district court was correct in applying equitable estoppel in this case is a question of law subject to de novo review."); see also Balogun v. U.S. Att'y Gen., – F.3d –, 2005 WL 2333840, at *2-5 (11th Cir. Sept. 26, 2005) (noting that under the REAL ID ACT's amendments courts of appeal now have jurisdiction to review the question of law as to whether "a petitioner's conviction is an aggravated felony within the meaning of 8 U.S.C. § 1182(h)").

## III.

Tovar-Alvarez contends that he became an American citizen when he signed the oath vowing allegiance to the United States in the presence of an INS officer during his naturalization interview. We review de novo legal questions arising from claims of nationality. Sebastian-Soler v. U.S. Attorney Gen., 409 F.3d 1280, 1283 (11th Cir. 2005) (per curiam).

"The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a). In order to become a citizen, an applicant must take an oath of allegiance during a "public ceremony before the Attorney General or a court with jurisdiction under section 1421(b)." 8 U.S.C. § 1448(a). It is the Attorney General's responsibility to "prescribe rules

5

and procedures to ensure that the ceremonies conducted by the Attorney General for the administration of oaths of allegiance . . . are public, conducted frequently and at regular intervals, and are in keeping with the dignity of the occasion."  8 U.S.C. § 1448(d).

Pursuant to his rule-making authority, the Attorney General has promulgated the following regulation regarding the "public ceremony" requirement:

> An applicant for naturalization who has elected to have his or her oath of allegiance administered by the Service or an Immigration Judge and is not subject to the exclusive oath administration authority of an eligible court pursuant to section 310(b) of the Act <u>shall appear in person in a public ceremony, unless such appearance is specifically excused under the terms and conditions set forth in this part.</u>  Such ceremony shall be held at a time and place designated by the Service or the Executive Office for Immigration Review within the United States and within the jurisdiction where the application for naturalization was filed, or into which the application for naturalization was transferred pursuant to § 335.9 of this chapter.

8 C.F.R. § 337.2(a) (emphasis added); <u>see also</u> 8 C.F.R. § 337.9(a) (stating that an applicant for naturalization is not a citizen until "the applicant takes the prescribed oath of allegiance . . . in an administrative ceremony or in a ceremony conducted by an appropriate court . . .").

Tovar-Alvarez has failed to show that he has taken the oath of allegiance during a public ceremony.  Because Tovar-Alvarez failed to participate in a public ceremony as required by the regulations governing naturalization, he has not

satisfied the statutory prerequisites of citizenship.  Accordingly, we conclude that Tovar-Alvarez is not a citizen of the United States.

## IV.

Tovar-Alvarez also contends that he has become an American national by demonstrating his allegiance to the United States during his 20-year residence in this country.  In support of this claim, Tovar-Alvarez notes that he has numerous relatives living legally in the United States; that he has registered with the Selective Service; that he has applied for naturalization; and that he has signed the oath of allegiance to the United States.  He argues that the plain language of the INA, the Fourth Circuit's decision in United States v. Morin, 80 F.3d 124 (4th Cir. 1996), and international law, support his position.

In Sebastian-Soler, we rejected the notion that an alien could establish nationality by demonstrating his permanent allegiance to the United States through longtime residence and application for citizenship.  409 F.3d at 1285–87.  Though 8 U.S.C. § 1101(a)(22) states that a person is a "national of the United States" if he owes "permanent allegiance to the United States," the manner in which one comes to owe allegiance to the United States is through birth or naturalization pursuant to the statutory scheme enacted by Congress, see 8 U.S.C. §§ 1401–1409, 1421–1458.  Sebastian-Soler, 409 F.3d at 1286.  Moreover in Sebastian-Soler, we

specifically rejected the Fourth Circuit's reasoning in <u>Morin</u>. 409 F.3d at 1287. Because Tovar-Alvarez was not born in the United States and has not been naturalized, he is not a United States national.

V.

Finally Tovar-Alvarez contends that the government should be equitably estopped from treating him as an alien because the INS should have granted him citizenship within 120 days of its March 1999 examination of his naturalization application.

The INS's regulations provide that an INS officer "shall grant the application [for naturalization] if the applicant has complied with all requirements for naturalization under this chapter. A decision to grant or deny the application shall be made . . . within 120 days after the date of the initial examination of the applicant." 8 C.F.R. § 335.3(a).

Tovar-Alvarez argues that the INS had a duty to act and that it unreasonably failed to do so because his petition for naturalization had not yet been granted nearly two years after the interview. He characterizes this failure to act as affirmative government misconduct solely attributable to the INS and contends that the government should be equitably estopped from asserting that he is an alien because, but for the INS's malfeasance, he would not be one.

Whether equitable estoppel should apply is a legal question that we review de novo. Walcott, 972 F.2d at 325. The Supreme Court has never established that the doctrine of equitable estoppel can be applied against the government and, in fact, has implied that it can not be. Tefel v. Reno, 180 F.3d 1286, 1302 (11th Cir. 1999) (citing Office of Pers. Mgmt. v. Richmond, 496 U.S. 414, 422, 110 S. Ct. 2465, 2470 (1990) ("In sum, Courts of Appeals have taken our statements as an invitation to search for an appropriate case in which to apply estoppel against the Government, yet we have reversed every finding of estoppel that we have reviewed.")).

Even assuming equitable estoppel could be asserted against the government, it would require a showing of affirmative misconduct on the government's part. Tefel, 180 F.3d at 1303. The INS's delay in processing Tovar-Alvarez's petition for naturalization does not rise to the level of affirmative misconduct. See Immigration & Naturalization Serv. v. Miranda, 459 U.S. 14, 103 S. Ct. 2812 (1982) (holding that the INS's 18-month delay in considering an application for a spousal immigrant visa was not the type of affirmative misconduct which could estop the government). Accordingly, Tovar-Alvarez's equitable estoppel argument fails.

**PETITION DENIED.**