[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-14511
Non-Argument Calendar
_____

Agency No. A090-957-775

JOSE MIGUEL MISPIRETA-CASTRO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(April 28, 2014)

Before HULL, MARCUS and FAY, Circuit Judges.

PER CURIAM:

Jose Miguel Mispireta-Castro, a native and citizen of Peru, seeks review of

the Board of Immigration Appeals's ("BIA") decision affirming the Immigration

Judge's ("IJ") denial of his motions to terminate proceedings and his application

for a waiver of inadmissibility under the former Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c) ("§ 212(c) waiver").  On appeal, Mispireta-Castro argues that: (1) his removal proceedings were invalid because the Department of Homeland Security ("DHS") failed to rescind his lawful permanent resident ("LPR") status prior to placing him in removal proceedings, as required by 8 C.F.R. §§ 245a.3(o), 246.1, and 246.3; (2) the five-year statute of limitations in 8 U.S.C. § 1256 barred the government from placing him in removal proceedings based on a purported lack of eligibility for adjustment of status; and (3) equitable estoppel precluded his removal because the IJ and BIA erroneously concluded that he had never been an LPR.  After thorough review, we deny the petition.

We review only the BIA's decision, except to the extent it expressly adopts the IJ's opinion.  Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).  We review questions of law de novo.  De Sandoval v. U.S. Att'y Gen., 440 F.3d 1276, 1278 (11th Cir. 2006).  Whether equitable estoppel applies is a legal question we review de novo.  Tovar-Alvarez v. U.S. Att'y Gen., 427 F.3d 1350, 1353 (11th Cir. 2005).  Under the prior precedent rule, we must follow prior binding precedents unless they are overruled by the Supreme Court or this Court en banc.  United States v. Vega-Castillo, 540 F.3d 1235, 1236 (11th Cir. 2008).

First, we are unpersuaded by Mispireta-Castro's claim that DHS was required to rescind his LPR status prior to placing him in removal proceedings, and

2

failed to do so. The provision of the INA that governs the adjustment of status of certain aliens who entered the United States before 1982 was 8 U.S.C. § 1255a. Under this section, the Attorney General was required to adjust an alien's status to that of a temporary resident if he met certain requirements, including that he be "admissible to the United States as an immigrant." 8 U.S.C. § 1255a(a)(4)(A). The temporary resident's status was then required to be adjusted to that of an alien lawfully admitted for permanent residence if he met certain requirements, including that he be "admissible to the United States as an immigrant" and not convicted of any felony in the United States. 8 U.S.C. § 1255a(b)(1)(C)(i)-(ii). "Rescission of adjustment of status under [8 U.S.C. § 1255a] shall occur under the guidelines established in [8 U.S.C. § 1256]." 8 C.F.R. § 245a.3(o).

Under 8 U.S.C. § 1256(a),

[i]f, at any time within five years after the status of a person has been otherwise adjusted under [§ 1255]. . . or any other provision of law to that of an alien lawfully admitted for permanent residence, it shall appear to the satisfaction of the Attorney General that the person was not in fact eligible for such adjustment of status, the Attorney General shall rescind the action taken granting an adjustment of status to such person and cancelling removal in the case of such person if that occurred and the person shall thereupon be subject to all provisions of this chapter to the same extent as if the adjustment of status had not been made. Nothing in this subsection shall require the Attorney General to rescind the alien's status prior to commencement of procedures to remove the alien under [§] 1229a of this title, and an order of removal issued by an [IJ] shall be sufficient to rescind the alien's status.

3

The regulations set forth the procedure for rescission proceedings brought pursuant to § 1256(a).  See 8 C.F.R. Part 246.  In Alhuay v. U.S. Att'y Gen., we considered whether the five-year statute of limitations in § 1256(a) applied to both rescission and removal proceedings.  661 F.3d 534, 543-46 (11th Cir. 2011).  We noted that the last sentence of § 1256(a) drew a clear line between rescission and removal, and "unequivocally permits the Attorney General to remove an alien without first rescinding [his] status."  Id. at 545-46.

Here, the BIA did not err in concluding that the IJ had jurisdiction over Mispireta-Castro's case even though the DHS did not first rescind his permanent resident status.  Section 1256(a) undisputedly applies to Mispireta-Castro even though his status was adjusted pursuant to § 1255a, not § 1255.  See 8 U.S.C. § 1256(a) (indicating that it applied to any person who adjusted their status under §§ 1255 or 1259 or "any other provision of law to that of an alien lawfully admitted for permanent residence"); 8 C.F.R. § 245a.3(o).  As we acknowledged in Alhuay, the last sentence of § 1256(a) clearly provides that the DHS did not have to rescind Mispireta-Castro's permanent resident status prior to the initiation of removal proceedings.  8 U.S.C. § 1256(a); Alhuay, 661 F.3d at 545-46.  The fact that the regulations set forth a procedure for rescission proceedings does not mean that DHS must first conduct such proceedings before initiating removal proceedings.

4

We likewise find no merit to Mispireta-Castro's claim that the five-year statute of limitations in 8 U.S.C. § 1256 barred the government from placing him in removal proceedings.  In Alhuay, we joined the Fourth, Sixth, Eighth, and Ninth Circuit in holding that § 1256(a) did not bar the government from removing an alien merely because that alien's status was erroneously adjusted to that of a permanent resident more than five years earlier.  661 F.3d at 544-45.  We noted that the first sentence of the provision, which contained the five-year limitation, merely mandated the rescission of adjustment of status for individuals who fell within the prescribed category, but said nothing about beginning removal proceedings or DHS's power to remove any alien.  Id. at 545.  Again, the provision's last sentence supported the conclusion that the five-year statute of limitations did not apply to removal proceedings because it drew a clear line between rescission and removal proceedings.  Id.

As applied here, the BIA did not err in concluding that Mispireta-Castro's removal proceedings were not barred by the statute of limitations.  Pursuant to Alhuay, the five-year statute of limitations in § 1256 does not apply to removal proceedings.  661 F.3d at 544-45.  Because neither this Court sitting en banc nor the Supreme Court has overruled Alhuay, we are bound to follow its holding.  See Vega-Castillo, 540 F.3d at 1236.

Finally, we reject Mispireta-Castro's claim that equitable estoppel precluded his removal.  Neither this Court nor the Supreme Court has definitively held that the doctrine of equitable estoppel is applicable to immigration proceedings.  See Savoury v. U.S. Att'y Gen., 449 F.3d 1307, 1318-19 (11th Cir. 2006) (noting that "it is far from clear that the doctrine of equitable estoppel may be applied against a government agency," and pointing out that the Supreme Court has, in several immigration cases, specifically declined to apply estoppel against the government). But assuming that equitable estoppel can be applied in an immigration case, a petitioner must establish three elements in order to invoke it: "(1) words, conduct, or acquiescence that induces reliance; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; [and] (3) detrimental reliance." Id. at 1319 (quotation omitted).  In addition, the petitioner must demonstrate that the government engaged in affirmative misconduct -- a showing of negligence or mere inaction is insufficient. Id.

In Savoury, we held that an alien whose status was erroneously adjusted to that of a permanent resident because he had a prior criminal conviction that rendered him inadmissible at the time of adjustment of status had never been lawfully admitted to the United States for permanent residence, and thus, was not statutorily eligible for a § 212(c) waiver. Id. at 1313, 1317.  We further determined that, even if equitable estoppel applied in immigration proceedings, Savoury could

6

not establish the elements of such a claim. Id. at 1319. Savoury had not shown that his adjustment of status was due to affirmative misconduct even though he told the immigration officer at his adjustment interview about his pending drug charges and, after he was convicted, but before he was granted adjustment of status, submitted his conviction records. Id. at 1310, 1319. He also could not show detrimental reliance because he had received a benefit from the government's earlier mistake in granting him adjustment of status, rather than suffering a detriment. Id. at 1319.

As an initial matter, Mispireta-Castro's argument that the IJ and BIA erroneously determined that he had never been an LPR is meritless. The fact that his status was adjusted to that of a temporary resident does not mean that his status was subsequently lawfully adjusted to that of a permanent resident. See 8 U.S.C. § 1255a(b)(1)(C) (providing that the Attorney General shall adjust the status of an alien lawfully provided temporary resident status to that of a permanent resident if, among other things, he is admissible to the United States and has not been convicted of a felony in the United States). Based on his 1989 delivery of cocaine conviction, Mispireta-Castro did not meet these requirements at the time of his 1992 adjustment of status. Id.; see 8 U.S.C. § 1182(a)(2)(A)(i)(II). Because Mispireta-Castro was not statutorily eligible for adjustment of status at the time it

was granted, he had never been lawfully admitted for permanent residence.  See Savoury, 449 F.3d at 1317.

Even assuming that equitable estoppel can be applied against the government in an immigration proceeding, Mispireta-Castro has failed to establish the elements of an estoppel claim.  First, he has not shown that government's initial decision to adjust his status to that of a permanent resident was due to affirmative misconduct, rather than to inaction or negligence.  See id. at 1310, 1319.  In addition, Mispireta-Castro did not suffer any legal detriment as a result of the government's decision to admit him into the United States.  See id. at 1319.  Thus, Mispireta-Castro's equitable estoppel claim fails.

**PETITION DENIED.**